**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Allen Ray JORDAN, Defendant–
Appellant.**

No. 00–10233.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 13, 2001.

Submission withdrawn Sept. 13, 2001.

Resubmitted May 22, 2002.

Filed May 30, 2002.

William S. Wong, Assistant United States Attorney, Sacramento, CA, for the plaintiff-appellee.

Jeffrey L. Staniels, Assistant Federal Public Defender, Sacramento, CA, for the defendant-appellant.

Before CANBY, HAWKINS, and GOULD, Circuit Judges.

## OPINION

GOULD, Circuit Judge.

Allen Ray Jordan was convicted by a jury on three counts of offenses involving the illegal manufacture of methamphetamine. Jordan appeals, arguing that the district court erred when it: (1) imposed life sentences on two counts in violation of *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000); (2) enhanced his sentence under U.S.S.G. § 3B1.1(a) for his leadership role in the offense; (3) denied his motion to suppress; and (4) rejected his motion to reopen the motion to suppress.

We hold that Jordan's life sentence was imposed in violation of *Apprendi.* We also hold that the leadership role enhancement was clearly erroneous. We affirm denial of Jordan's motions seeking to suppress key evidence. We affirm Jordan's conviction, vacate Jordan's sentence, and remand to the district court for resentencing.

## I.

This tale of criminal mischief begins in August 1996, when Paula Bolton, a confidential informant seeking the government's favor in another criminal case, gave information to California law enforcement about a methamphetamine laboratory located on a rural property leased to Jordan. Soon thereafter, a search warrant was issued for Jordan's property based on Bolton's statements, information given by two other confidential informants, and Jordan's criminal history. During the search, amid the rural farm setting, police found a methamphetamine laboratory and 349.9 grams of methamphetamine contained in mixtures. Jordan was arrested, and police then searched his apartment pursuant to a warrant.

Jordan was charged with conspiracy to manufacture methamphetamine, in violation of 21 U.S.C. §§ 846, 841(a)(1), attempt to manufacture methamphetamine, in violation of 21 U.S.C. §§ 846, 841(a)(1), and maintaining a place for the manufacture of methamphetamine, in violation of 21 U.S.C. § 856. Drug quantity was not alleged in the indictment.[1]

Jordan filed a motion to suppress the evidence gathered from the searches. He

---

1. A further investigation led to the arrest of co-defendant Jeffrey Hamilton Seibold, who is not a party to this appeal.

claimed that the police detective made material misstatements and omissions in the first search warrant affidavit. The district court held an evidentiary hearing and denied the motion.

A jury convicted Jordan on all three counts. Before sentencing, Jordan filed a motion to reopen his failed motion to suppress. Jordan argued that Bolton's trial testimony was inconsistent with her prior statements, showed that she was acting as a government agent and showed she had made a trespassory search of Jordan's property. The district court denied Jordan's motion.

Jordan next challenged the presentence report (PSR), alleging, *inter alia*, (1) that the PSR's statements that Jordan exercised a leadership role were not supported by the evidence; and (2) that under *Jones v. United States*, 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999), the government must allege in the indictment and must prove to a jury beyond a reasonable doubt that the drug quantity was greater than fifty grams to make Jordan eligible for the elevated maximum sentence of life imprisonment pursuant to 21 U.S.C. § 841(b)(1)(A)(viii).

The district court rejected Jordan's challenge to the PSR, finding that the role enhancement was proper on grounds that there were five participants in the criminal operation and that Jordan exercised a leadership role over his nephew Taylor Jordan. The district court, whose ruling predated *Apprendi*, also concluded that *Jones* did not mandate that the drug quantity be included in the indictment and proved to a jury beyond a reasonable doubt.

Jordan was sentenced to concurrent terms of life imprisonment on Counts One and Two and twenty years imprisonment on Count Three.

## II.

### A. Apprendi Claim

■ Jordan claims the district court erred by sentencing him under 21 U.S.C. § 841(b)(1)(A)(viii), for a crime involving more than 50 grams of methamphetamine, because drug quantity was not charged in the indictment. Jordan claims he should be resentenced under 21 U.S.C. § 841(b)(1)(C), for a crime involving an indeterminate amount of drugs, with a maximum sentence of 20 years for each count, rather than the maximum sentence of life imprisonment under § 841(b)(1)(A)(viii). Because of the Supreme Court's shift of direction in *Apprendi*, and our subsequent precedent, we agree that Jordan is entitled to relief.

Under *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), the Supreme Court firmly established a striking rule: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi* expressly left open whether such a fact must also be charged in the indictment, *see* 530 U.S. at 477 n. 3, 120 S.Ct. 2348, an issue that Jordan presents today.

The Supreme Court's rationale explained that the *Apprendi* rule was foreshadowed by its decision in *Jones v. United States*, 526 U.S. 227, 243 n. 6, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999), which had held that "any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt." [2] *See Ap-*

---

**2.** *Apprendi* was a state prosecution, while *Jones* was federal. Because the Fifth Amend-

*prendi,* 530 U.S. at 476, 120 S.Ct. 2348. In *United States v. Buckland,* 289 F.3d 558, 2002 WL 857751, *6 (9th Cir.2002) (en banc), we expressly held that, in the light of *Apprendi,* drug quantity was a material fact of a drug offense, and that due process requires that drug quantity "must be charged in the indictment." *Buckland* answered for our circuit the question left open by the Supreme Court in *Apprendi,* by holding that any fact other than a prior conviction that increases the maximum penalty for a federal crime must also be charged in an indictment. *See id.*[3] This rule, announced after Jordan's conviction, was offended by Jordan's prosecution, and he may benefit from the rule because he is on direct appeal. *See Griffith v. Kentucky,* 479 U.S. 314, 328, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987).

Drug quantity was neither charged in the indictment, nor submitted to the jury and proved beyond a reasonable doubt. The district court therefore erred when it sentenced Jordan above the default maximum sentence for a crime involving an indeterminate quantity (twenty years per count), sentencing him instead to the maximum sentence for a crime involving 50 grams or more of methamphetamine (life imprisonment).

Jordan was prescient enough to preserve his claim that drug quantity should have been included in the indictment and submitted to the jury.[4] This case is unlike most *Apprendi* cases, for here we do not review the district court's sentence for plain error, but instead for harmless error. *See United States v. Garcia–Guizar,* 234 F.3d 483, 488 (9th Cir.2000). Jordan's sentence "cannot stand unless the district court's constitutional *Apprendi* error was harmless beyond a reasonable doubt." *Id.* (citing *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)).

As there is little judicial experience on this issue, it is not perfectly clear how to analyze whether *Apprendi* error is harmless. *See United States v. Nordby,* 225 F.3d 1053, 1060 (9th Cir.2000) (overturned on other grounds) (discussing how to analyze under plain error whether *Apprendi* error affects substantial rights). We see two analytical options: One is that we might look only at the sentence received to see if it is greater than the maximum sentence the defendant should have faced. The other is that, instead, we might canvass the record to see whether, had the defendant been properly indicted and the jury properly instructed, we could say beyond any reasonable doubt that the defendant would have been found guilty of the more severely punishable crime. *See id.*

 In *Buckland,* as part of plain error review, we analyzed whether the defendant's substantial rights had been affected by *Apprendi* error. The substantial rights analysis under plain error is similar

ment right to grand jury indictment does not extend to state prosecutions, *see Hurtado v. California,* 110 U.S. 516, 4 S.Ct. 111, 28 L.Ed. 232 (1884), Apprendi did not raise the issue of indictment, and the Supreme Court naturally did not address it. In contrast, this federal prosecution of Jordan squarely raises the issue.

3. We are in good company. Almost all federal circuits that have addressed this issue agree that the indictment requirement follows from the *Apprendi* rule and its rationale. *See, e.g., United States v. Thomas,* 274 F.3d 655, 663 (2d Cir.2001) (citing cases requiring drug quantity be charged in an indictment).

4. *Apprendi* had not been decided at the time of Jordan's trial. However, like the defendant in *United States v. Garcia–Guizar,* 234 F.3d 483, 488 (9th Cir.2000), Jordan relied upon *Apprendi's* predecessor, *Jones,* in arguing that drug quantity must be alleged in the indictment and proven beyond a reasonable doubt. This is sufficient to preserve the *Apprendi* claim for harmless error review. *See Garcia–Guizar,* 234 F.3d at 488.

to a harmless error analysis. The difference is that under plain error, the burden of persuasion is on the defendant to show that the error was prejudicial, and in harmless error analysis, the burden is on the government to show that it was not.[5] *See United States v. Olano,* 507 U.S. 725, 734, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). In *Buckland,* we looked beyond a simple comparison of the sentence received and the sentence the defendant should have faced; we assessed the record and concluded that any reasonable jury would have found the defendant guilty of a crime involving a certain quantity of drugs, triggering the higher maximum sentence. *See Buckland,* 289 F.3d 558, 569.

■ But in *Buckland,* drug quantity was charged in the indictment—the *Apprendi* error was that quantity was not proved to a jury beyond a reasonable doubt.[6] Here, the error is that quantity was neither alleged in the indictment nor proved to a jury beyond a reasonable doubt. We therefore do not have the ability the *Buckland* court had simply to determine whether a proper jury instruction would have made any difference.[7] Be-

cause the indictment did not allege quantity, we would first have to determine whether the grand jury would have indicted the defendant for over 50 grams of methamphetamine. Then, because Jordan had no notice from the indictment that quantity would be an issue at trial, we would need to determine whether Jordan might have contested quantity and what evidence Jordan might have presented. Finally, to affirm the sentence, we would need to be able to say beyond any reasonable doubt that a jury, considering the actual evidence at trial and perhaps other evidence that was never presented, would have convicted Jordan of the higher-quantity offense.

■ Here, we cannot reasonably conclude that these issues can be answered fairly based on reason and the record presented. When quantity is neither alleged in the indictment nor proved to a jury beyond a reasonable doubt, there are too many unknowns to be able to say with any confidence, let alone beyond reasonable doubt, that the error was harmless. What evidence might have been proffered by Jordan, in a defensive effort to minimize

---

**5.** In addition, a reviewing court may notice a plain error affecting substantial rights only if the error "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *See United States v. Olano,* 507 U.S. 725, 732, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993).

**6.** Quantity was charged in Buckland's indictment for at least one of the charges against him. This renders the *Buckland* analysis different from the one here, because Buckland had notice from the indictment that he should contest quantity at trial, if he chose to do so. Jordan had no such notice from his indictment. Also, concerns of fundamental fairness are perhaps not as compelling when a defendant has notice on some, but not all, charges that drug quantity will be an issue for trial.

**7.** *United States v. Cotton,* 535 U.S. ——, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002), does not

control nor aid our analysis. The lack of drug quantity in the indictment and jury decision in that case was analyzed under plain error, not harmless error. The Supreme Court denied relief for the defendants because "the error did not seriously affect the fairness, integrity, or public reputation of judicial proceedings." *Id.,* at 1787. Because defendants failed this fourth prong of the plain error test, *see supra,* at n. 5, the Supreme Court did not analyze whether the error affected the defendants' substantial rights, an analysis which might have been significant here. However, the fairness and integrity prong is inapplicable to our harmless error review. Also, the Supreme Court did not decide whether or not the indictment error was a structural error, which, in any case, need not be automatically corrected under plain error review. *See Cotton,* at 1787; *Johnson v. United States,* 520 U.S. 461, 466–69, 117 S.Ct. 1544, 137 L.Ed.2d 718.

quantity, if the indictment had properly charged the quantity involved in the offense, is entirely speculative. We hold that the government cannot meet its burden under the harmless error standard when drug quantity is neither charged in the indictment nor proved to a jury beyond reasonable doubt, if the sentence received is greater than the combined maximum sentences for the indeterminate quantity offenses charged. In other words, when *Apprendi* error occurs because a material fact that increases the maximum sentence was neither alleged in the indictment nor submitted to the jury, the error must be corrected if the sentence issued is greater than what the defendant could have received had the district court issued consecutive sentences on offenses where the material fact is not needed.[8] *See Buckland*, 289 F.3d 558, 569 (describing stacking of sentences).

The government argues that a stipulation by the defendant at sentencing can cure the *Apprendi* error. However, as noted in *Nordby*, "[a]ny new admissions by[defendant] at sentencing, made after the jury had already rendered its verdict, are irrelevant to this inquiry." 225 F.3d at 1061 n. 6. A stipulation at sentencing does not address the jury's finding and cannot be considered under *Apprendi.*

Because the district court's drug quantity finding increased Jordan's maximum penalty from 20 years per count to life, and because Jordan was sentenced to more than 20 years per count, *Apprendi* error occurred. Because drug quantity was neither charged in the indictment nor proved to a jury beyond a reasonable doubt, we vacate Jordan's sentence and remand for resentencing. On remand, the district court shall resentence Jordan under § 841(b)(1)(C) with a maximum of twenty years for each count.

### B. Leadership Role Enhancement under U.S.S.G. § 3B1.1(a)

Jordan challenges the district court's four-level sentence enhancement under § 3B1.1(a) for a leadership role in the offense. We review the district court's factual finding that Jordan exercised a leadership role, and ancillary or supportive findings of fact, for clear error. *United States v. Maldonado*, 215 F.3d 1046, 1050 (9th Cir.2000).

■ The district court may make an upward adjustment for a leadership role under § 3B1.1(a) if (1) the defendant was "an organizer or leader of a criminal activity," and (2) that activity "involved five or more participants or was otherwise extensive." The factors to be considered when determining whether a defendant was an organizer or leader include: the exercise of decision-making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, and the degree of control and authority exercised over others. *See* U.S.S.G. § 3B1.1 cmt. n. 4 (2000).

Jordan objected to the PSR's findings (1) that five or more people were involved in the criminal operation and (2) that Jordan was an organizer or leader. The district court first overruled Jordan's objection in an order:

> The adjustment for role in offense contained in paragraph 18 of Presentence Report is proper. The evidence presented at trial indicates that defendant Jordan had a leadership role in the

---

8. We are not presented with the issue, and therefore do not reach the question, what type of harmless error analysis would be required if a defendant is sentenced beyond the maximum for one count of an indeterminate quantity, but the total sentence is below the combined maximum of multiple counts. Whether *Buckland's* stacking analysis would render error harmless in this context is a question for another day.

criminal activity which took place in the defendant's house which involved five individuals including the [sic] Jordan, Seibold, Taylor Jordan, Edward Rainwater and John Rowin and warrants a four level enhancement.

Jordan objected to the district court's order at sentencing. The court again overruled the objection and issued further findings, including:

> Taylor Jordan's involvement, the evidence was fairly clear with respect to his involvement, at least insofar as he appeared to the Court to be a look-out for this particular operation.

> With respect to leadership role, Mr. Jordan indicates he is indeed a leader. He has a very strong personality. The Court notes that.

> The Court notes that Mr. Taylor Jordan in particular was very deferential to his uncle. The Court notes that in his testimony and his conduct and his appearance and attitude.

The district court also found that the meth lab operation was "extensive."

The district court did not err in finding that there were five or more members involved in the criminal operation or that the activity was extensive. For this first requirement for the four-level enhancement, the government satisfied its burden by showing this fact by a preponderance of the evidence.

■ However, the government did not satisfy its burden as to the second requirement for the four-level enhancement: that Jordan played a leadership role in the offense. On this issue, the government presented little evidence. In the face of objections from Jordan, the government did not offer support for contentions in the PSR that Jordan recruited his nephew into the operation and procured the lab equipment. Instead, the district court was forced to rely on other grounds for issuing the role enhancement, and we hold those grounds to be insufficient.

■ The district court's reasons for finding Jordan displayed a leadership role—the nephew's deferential behavior and Jordan's strong personality—were insufficient to support a role adjustment. That Taylor Jordan showed deference to his uncle at trial was not enough to determine that defendant Jordan exercised a leadership role over his nephew in a criminal capacity. Moreover, just as "utiliz[ing] organizational skills" in a criminal endeavor "is not the same as organizing other conspirators," having leadership qualities, such as a strong personality, does not in itself prove that the defendant exercised them to support underlying criminal conduct. *United States v. Hoac*, 990 F.2d 1099, 1111 (9th Cir.1993) (internal quotation marks omitted); *see also United States v. Frankhauser*, 80 F.3d 641, 655 (1st Cir.1996) (vacating sentence enhancement for leadership role and explaining that "[t]he court must focus on *what the defendant did*, in relation to at least one other participant, in the commission of the offense." (emphasis original)).

■ The district court may have had insights and intuition about respective roles of Jordan and others. But factual contentions of leadership role, such as those contained in the PSR, are not supported by evidence in the pretrial, trial, or sentencing records.[9] Although we find ev-

---

9. The PSR stated:

Allen Jordan appears to have maintained control over the residence where the lab was found. He procured and maintained the laboratory equipment. He recruited his nephew, Taylor Jordan, to serve as a look-out at the lab site.... [H]e instructed John Rowuin to contact one of the witnesses in this case to obtain information about the investigation thereby suggesting he exerted some influence over Rowuin.

idence that Taylor Jordan was part of the criminal activity, we do not find evidence that Allen Jordan had recruited his nephew Taylor Jordan to serve as a look-out. A merely speculative logic cannot displace the need for evidence on such an issue, which cannot be decided by assumption or inference not based on fact. The government did not question Taylor Jordan at trial about how he became involved in the offense. Nor did any other witness testify that Taylor Jordan was recruited by his uncle.

 Also, the PSR's statement about John Rowuin—that he contacted a witness at Jordan's request—was unsupported by evidence. There was no evidence showing that John Rowuin was acting at Jordan's insistence when he contacted the witness. Also unsupported by evidence in the record is the PSR's statement that Jordan procured the laboratory equipment. Finally, a leadership role enhancement cannot be sustained by the lone fact that the laboratory was located on property that defendant leased. If coupled with adequate other evidence, this fact might help show Jordan played a leadership role. But the record contains no such other evidence. Tenancy in and of itself, on its own without corroborating evidence of leadership, is insufficient to sustain a leadership role enhancement. *See United States v. Mares–Molina,* 913 F.2d 770, 773–74 (9th Cir.1990).

The district court's factual finding that Jordan exercised a leadership role is clearly erroneous. Ordinarily on such an issue, we give broad deference to the district court, which gained an intimate understanding of the people and events involved over the course of the three-week trial. But here the government did not present enough evidence to justify imposition of the leadership role enhancement. The weak case presented on this issue leads us to remand to the district court for resentencing. *See, e.g., United States v. Avila,* 95 F.3d 887, 891–92 (9th Cir.1996) (rejecting a four-level role enhancement where the "record [did] not contain any evidence that Avila exercised authority over any of the other participants"). On remand for resentencing, the district court may assess the government's right to submit further evidence on this issue within the guidelines established by *United States v. Matthews,* 278 F.3d 880, 885–86 (9th Cir.2002) (en banc).

### C. Motion to Suppress

 Jordan appeals the district court's denial of his motion to suppress. He challenges the district court's factual findings that (1) there were no intentional or reckless misstatements or omissions in the search warrant affidavit; and (2) any such misstatements or omissions were not material. We review the district court's denial of a motion to suppress relating to a search warrant *de novo. United States v. Wright,* 215 F.3d 1020, 1025 (9th Cir.2000). The underlying factual findings relating to a motion to suppress are reviewed for clear error. *United States v. Noushfar,* 78 F.3d 1442, 1447 (9th Cir.1996).

Had the presentence report provided some basis for these assertions, such as hearsay statements from other persons even outside the trial record, then the district court might have been able to rely on the described facts at sentencing. However, the district court did not expressly adopt the above statement as a finding, and had it been adopted, we would have to reject it, without more, for the reasons above explained.

We permit reliance on hearsay statements in a presentence report under a preponderance of the evidence determination for sentencing purposes. *See United States v. Berry,* 258 F.3d 971, 976 (9th Cir.2001). But it would be quite another thing, and unwarranted, to permit reliance on mere conclusory assertions in a presentence report without further basis. *See United States v. Gamez–Orduno,* 235 F.3d 453, 464 (9th Cir.2000).

Jordan alleges that Detective Rinelli, who spoke with confidential informant Paula Bolton, misstated and concealed facts when relating his discussion with Bolton to Detective Wegner. Wegner used information from his discussion with Rinelli when completing the affidavit for the first search warrant.

█ Jordan must make a two-fold showing for his motion to suppress to be granted. First, he must make a substantial preliminary showing, by a preponderance of the evidence, "that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit." *Franks v. Delaware,* 438 U.S. 154, 155, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). Second, he must show that after setting aside any such misstatements and omissions, there would not be probable cause for the search warrant. *Franks,* 438 U.S. at 171–72, 98 S.Ct. 2674.

Here, the district court found that Rinelli made misstatements to Wegner, but that the misstatements and omissions were not intentional or reckless. The district court did not clearly err in ruling that there were no intentional or reckless misstatements or omissions in the search warrant affidavit. Jordan fails to satisfy the first prong of the test.

#### D. Motion to Reopen the Motion to Suppress

█ Jordan also contends that the district court incorrectly refused to reopen the motion to suppress. We review the district court's ruling denying a motion to reopen a suppression hearing for an abuse of discretion. *United States v. Hobbs,* 31 F.3d 918, 923 (9th Cir.1994). We review factual findings for clear error and give great deference to district court findings relating to credibility. *Nichols v. Azteca Rest. Enters.,* 256 F.3d 864, 871 (9th Cir. 2001).

In denying the motion to reopen, the district court found that Bolton's trial testimony was not credible and concluded that she recanted her earlier testimony because she was influenced by fear of Jordan. Because the district court found Bolton to be no longer credible, it would be useless to reopen the evidentiary hearing to question her further unless the district court's credibility determination was clearly erroneous. To the contrary, there was a sound basis for the district court's decision adverse to her credibility. Bolton's trial testimony reveals that she changed her story many times before, during, and after the trial. The district court's credibility finding was not clearly erroneous and the district court did not abuse its discretion in denying the motion to reopen.

### III.

We vacate Jordan's life sentence and remand for resentencing under 21 U.S.C. § 841(b)(1)(C). We reverse the district court's finding of a four-level sentence enhancement for leadership role, and remand for resentencing on that issue. We affirm the district court's denial of Jordan's suppression motions, and affirm his conviction.

**AFFIRMED** in part, **VACATED** in part, and **REMANDED.**