**UNITED STATES of America,
Plaintiff,**

**v.**

**Aisha McCAIN, Defendant.**

**No. CR 01–0344 MHP.**

United States District Court,
N.D. California.

July 9, 2003.

George L. Bevan Jr., Esq., U.S. Attorney's Office, San Francisco, CA, for Plaintiff.

Shana Keating, Esq., San Francisco, CA, for Defendant.

**MEMORANDUM AND ORDER re
Motion to Suppress Evidence**

PATEL, Chief Judge.

Defendant Aisha McCain has been charged with conspiracy and violations of federal drug and weapons laws. During the course of their investigation, police searched McCain's apartment pursuant to a state search warrant and seized drug packaging equipment as well as a significant quantity of crack cocaine. McCain now challenges issuance of the warrant on grounds that the warrant affidavit mislead the issuing magistrate by describing information derived from a federal wiretap in a manner that suggested the information came from an informant's firsthand observations. Having considered the arguments and submissions of the parties, and for the reasons set forth below, the court rules as follows.

*BACKGROUND*

On August 9, 2001, at approximately 3:00 pm, police executed a search warrant at the apartment of Aisha McCain at 358 Alida Way # 44 in South San Francisco, California. Hanley Dec., Exh. I. During the search police seized seventeen separate plastic bags containing a total of approximately sixteen ounces (or approximately 450 grams) of crack cocaine, as well as a 'kilogram press' and a 'can top press' used to package cocaine for distribution and sale, and metal and glass kitchenware used to 'cook' powder cocaine into crack cocaine. *Id.;* Bevan Dec., Exh. at 125. Officers found residue suspected to be cocaine and cocaine base on the kitchenware and on kitchen countertops. Hanley Dec., Exh. I. Residue on the countertops field-tested positive for cocaine. *Id.*

The warrant to search McCain's apartment was issued by California Superior Court Judge Patrick Mahoney. *Id.*, Exh. C. Inspector Matt Hanley of the San Fran-

cisco Police Department provided the affidavit in support of the warrant application. *Id.* In the warrant affidavit, Inspector Hanley stated that he had "obtained information derived from a confidential reliable source (hereinafter 'CRS') that Aisha McCain is a cocaine dealer who sells cocaine base (crack cocaine) in the San Francisco area." Warrant Affidavit, Hanley Dec., Exh. C. ("Warrant Affidavit"). Inspector Hanley described how the CRS had provided truthful information in the prior two months "which led to the arrest of one cocaine base dealer and the seizure of 102.83 grams of cocaine base … and the seizure of one firearm. The CRS has provided law enforcement with truthful information in the past two months which has been corroborated by investigation" *Id.*

Inspector Hanley continued to describe the facts which he believed would support a finding of probable cause to search McCain's apartment:

> According to the CRS, McCain is currently involved in the storing of narcotics, and delivery/transport of cocaine on behalf of one or more narcotics traffickers in the San Francisco area. . . .
>
> . . . . .
>
> Within the time frame referenced above …, law enforcement surveillance observed a known cocaine trafficker who is known to the CRS to have a narcotics relationship to Aisha McCain enter and exit the apartment complex on foot. Most recently, on the evening of August 8, 2001, law enforcement surveillance observed the vehicle known to be driven by this cocaine trafficker, parked in front of this apartment complex. The trafficker himself was not observed on this occasion, only his vehicle.
>
> I have further learned through the CRS that this cocaine trafficker and Aisha McCain communicate with each other on a regular basis about matters involving their narcotics activity, including storing narcotics at her residence in this apartment complex. According to the CRS, McCain has stored cocaine inside her residence on more than one occasion during this time frame, and on at least one occasion, this narcotics trafficker himself may have brought the cocaine into the apartment.

*Id.* Besides the information "derived from" the CRS, Inspector Hanley's affidavit contained only statements which described McCain's criminal history, described police observations of the car driven by McCain, and described police observation of McCain parking at her apartment complex. The affidavit also contained boilerplate language describing Inspector Hanley's training and his experience that narcotics traffickers often store narcotics at their residences. *Id.*

The government readily admits that the 'Confidential Reliable Source' described in the affidavit was not a human informant but a federally authorized wiretap of the cellular phone of codefendant Douglas Stepney. Bevan Dec. ¶ 8; Hanley Dec. ¶¶ 3(b), (d), (e), (f). The government explains that its purpose in so describing the wiretap was not to mislead the issuing magistrate, but to protect the confidentiality of the federal wiretap so as not to compromise the ongoing investigation. Bevan Dec. ¶ 8; *see also id.* ¶¶ 5, 6(d) (describing need to protect confidentiality of wiretap generally). The wiretaps in the case remained active until August 31, 2001, about three weeks after the execution of the warrant to search McCain's apartment. *Id.* ¶ 4.

Inspector Hanley states that he does not recall whether he orally disclosed the wiretap to Judge Mahoney. Hanley Dec. ¶ 14. To the best of Hanley's knowledge, Judge Mahoney asked no questions about either the warrant or the affidavit before signing

the warrant. *Id.* ¶ 3(f). Inspector Hanley further states that on June 13, 2003, he met with Judge Mahoney and asked him whether he recalled disclosure of the wiretap during the course of his review of the affidavit, and that Judge Mahoney had no recollection of the search warrant. *Id.*

In a declaration filed in opposition to McCain's present motion, Inspector Hanley states that he was familiar with the contents of the calls intercepted on the wiretap, that he "listened to tapes of pertinent calls," and that he read reports which quoted excerpts of the calls. Hanley Dec. ¶ 4(g). He also stated, "I cannot say with certainty that I was aware of each and every one of these calls in Exhibit B. However, I was familiar with content of wiretap calls ... that bore out each summary in the Affidavit of the information derived from the wiretap." *Id.* ¶ 4(h). Exhibit B to his declaration includes the transcripts of calls which the government maintains provide probable cause.

## LEGAL STANDARD

A defendant may challenge a search conducted pursuant to a warrant on grounds that the warrant affidavit, while facially adequate to support a finding probable cause, contained misstatements of fact or omissions which affected the issuing magistrate's determination. *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). A warrant may also be held invalid where the affiant has "intentionally or recklessly omitted facts required to prevent technically true statements in the affidavit from being misleading." *United States v. Whitworth*, 856 F.2d 1268, 1280 (9th Cir.1988) (omissions),

*cert. denied*, 489 U.S. 1084, 109 S.Ct. 1541, 103 L.Ed.2d 846 (1989) (quoting *United States v. Stanert*, 762 F.2d 775, 781 (9th Cir.1985)). Under *Franks*, a defendant must satisfy a two-part showing in order for a court to find a search warrant invalid and exclude the fruits of the search.[1] First, the defendant must show that the affiant's statement or omission was either intentionally false or misleading or demonstrated reckless disregard of the truth. *Franks*, 438 U.S. at 155–56, 98 S.Ct. 2674; *United States v. Jordan*, 291 F.3d 1091, 1100 (9th Cir.2002). Next, defendant must show that the alleged falsehoods or omissions were necessary to the issuance of the warrant, such that without the misrepresentations, the affidavit would not support a finding of probable cause. *Franks*, 438 U.S. at 155–56, 98 S.Ct. 2674; *Jordan*, 291 F.3d at 1100.

## DISCUSSION

McCain argues that the presentation of the 'Confidential Reliable Source' ("CRS") in the warrant affidavit misleadingly suggests that it is not a piece of technical equipment but a human informant. McCain contends that by masking the nature of the source, the affidavit portrays investigators' evaluations of wiretap evidence as the first-hand reports of a reliable witness. By describing investigators' inferences as collected evidence, McCain alleges that the affiant prevented the magistrate from evaluating whether a substantial factual basis existed for a finding of probable cause.

---

1. Ordinarily, a defendant initially seeks an evidentiary hearing on her challenge to the warrant by making a substantial showing that the affiant's statement or omission was either intentionally false or misleading or demonstrated reckless disregard of the truth. *United States v. Jordan*, 291 F.3d 1091, 1100 (9th Cir.2002). While this showing must go beyond conclusory allegations to provide a detailed offer of proof, clear proof is not required until the evidentiary hearing itself. *See United States v. Chesher*, 678 F.2d 1353, 1360, 1362 (9th Cir.1982). In the present case, however, none of the facts are disputed and so no hearing is necessary.

I. *Intentional Falsity or Reckless Disre-gard for the Truth*

■ The court first inquires whether the language in the warrant creates the false impression that the CRS is human rather than a wiretap. The government points to several features of the warrant that it argues imply the CRS is less than human. First, the wiretap is referred to as a 'Source' rather than an 'Informant.' This description, the government argues, is literally correct. Second, the affidavit states that the information is 'derived from' the CRS, rather than using a phrase that would imply active communication of one person to another. Third, the affidavit does not state whether the 'source' has a criminal history or whether the 'source' is receiving payment for the information pro-vided, as would ordinarily be done in the case of human informants.

Although the descriptions of the wiretap as 'confidential' and 'reliable' may be liter-ally true as the government maintains, the failure to state that the CRS was a wiretap may nonetheless be so misleading as to require suppression. *Whitworth*, 856 F.2d at 1280. In the present instance, the gov-ernment admits that the affidavit was carefully drafted so as to avoid disclosing the existence of a wiretap, but maintains that its artful language would alert only the reviewing magistrate to the fact that the CRS was a wiretap while misleading all other readers.

Even accepting the government's argu-ment that the descriptions of the CRS are literally true, several aspects of the affida-vit would lead the reader to believe that the CRS is a person. While the affidavit does not describe the criminal history of the CRS, it does state that the CRS pro-vided reliable information in the past which lead to the seizure of narcotics. A showing of reliability is generally required when probable cause is furnished by a human informant. *See Illinois v. Gates,*

462 U.S. 213, 230, 232–33, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). As a showing of past reliability of an informant's tips at-tests to the veracity of the informant, *see id.* at 233, 103 S.Ct. 2317 (equating reliabil-ity and veracity), no such showing is re-quired where the information in the affida-vit is provided by a wiretap because there is simply no possibility that a wiretap might, upon occasion, lie to investigators or accidentally report conversations which did not occur. Listing prior successful seizures might tell the magistrate that in-vestigators had been interpreting the wire-tap evidence sensibly, but such information would be irrelevant for a probable cause determination in which the magistrate should rely on evidence directly rather than law enforcement's interpretations. Consequently, Inspector Hanley's choice to attest to the 'reliability' of a wiretap source by listing successful seizures based on in-formation provided would lead a reviewer to think that the source was human.

The language used throughout the affi-davit to refer to evidence gleaned from the wiretap strongly suggests that the CRS is a person. Several times, Inspector Han-ley presents the conclusions as "according to the CRS." *See* Warrant Affidavit ("Ac-cording to the CRS, is currently involved in the storing of narcotics ....."; "Accord-ing to the CRS, McCain has stored cocaine inside her residence on more than one occasion ...."). While investigators might derive these conclusions from infor-mation provided by the wiretap, the wire-tap itself could have presented only evi-dence on which the conclusions are based, not the conclusions themselves. Most im-portantly, Inspector Hanley at one point describes an individual "known to the CRS to have a narcotics relationship to Aisha McCain." Surveillance equipment does not possess the consciousness required to 'know' information—humans do. In light of the ambiguous references to the CRS in

much of the document, the description of facts "known" to the CRS would alone be sufficient to lead a reasonable magistrate to conclude that the source was a person. The only other reference to the CRS, in which Patterson describes information "learned through the CRS" indicates nothing about the nature of the source.

The government contends that even if the warrant misleadingly portrayed the wiretap as a human informant, such a depiction does not constitute reckless disregard for the truth where the allegations in the affidavit are adequately supported by the actual wiretap conversations. The government now offers extensive transcripts of wiretap conversations which it maintains unambiguously establish probable cause to believe that McCain and Stepney are engaged in narcotics trafficking. They argue that because Inspector Hanley knew these conversations existed, he truly believed allegations stated in the affidavit that McCain was engaged in trafficking and storage of narcotics. However, it is not the affiant's belief that supports probable cause, but the magistrate's determination based on the facts set forth on the face of the affidavit. It is also not the post hoc presentation of evidence absent from the affidavit that will ·support probable cause, but what is presented to the magistrate at the time he issues the warrant.

McCain takes issue with two of the government's initial premises. First, McCain notes that Inspector Hanley states in his declaration that he cannot be sure that he was familiar with all of the conversations on the wiretap and does not recall which interceptions formed the basis for the conclusions stated in the wiretap. Hanley Dec. ¶ 4(h). This undermines Hanley's contention that his statements were adequately supported at the time he made them and underscores the need for an affiant to provide the factual basis of his conclusions.

Second, McCain argues that the cited conversations are not as unambiguous as the government makes them out to be. In the conversations, McCain and Stepney employ code and oblique references which, while perhaps transparent for an experienced officer, do not explicitly mention drugs.[2] Some conversations recount discussing selling or storage of unidentified items, once referring to an amount in ounces. Hanley Dec., Exh. at 42. However, only two of the cited conversations use the word "dope." In one of these Stepney asks McCain where an individual named 'Monique' is so he can sell her 'dope,' but McCain is not implicated in the transaction. *Id.* at 60. In another Stepney cautions McCain not to touch his 'dope' if she does not have money. *Id.* at 72. None of the conversations explicitly concern sale of drugs by McCain, and no conversation specifically uses the term cocaine.

 Even were the underlying conversations as clear as the government con-

---

**2.** The government cites as unambiguous exchanges such as "You sold some of that shit?" Hanley Dec., Exh. at 37; "How much you sell?" "Like two, I might have it all done by like tomorrow or the day after tomorrow . . ." *id.* at 38; "All right, hey, where Monique at?" "I don't know, why?" . . . "Just selling her some dope nigger, that's why . . . ." *id.* at 60; "Hm, you get that money for that zip?" *id.* at 41; "How much shit out there?" "Three." *id.* at 42; "How many things up there?" "Three." "There's three ounce there?" "Yeah." *id.* at 44; "You say that shit in a drawer?" "Yeah, in the drier sheets box." "Alright, all three of them?" "With the Bounce. Huh?" "All three of them?" "Yeah." *id.* at 46; "You ain't got two . . . um of them things at the house?" . . . "Hard or soft?" " . . . hard . . . ." *id.* at 46.

Stepney also told McCain on one phone call, "Look man from now on don't touch my shit unless you got some money. Cause I don't move like that. Don't get money though. For real. Bitch ain't got no money they don't get no dope." *Id.* at 72.

tends they are, it is irrelevant to the *Franks* inquiry whether the conclusions Inspector Hanley set forth in the warrant were reasonable given the wiretap evidence before him. Inspector Hanley's genuine belief in the overall existence of probable cause does not excuse a reckless disregard for truth in the factual assertions set forth in the affidavit upon which the magistrate's finding was based. Under the *Franks* test, when an intentional or reckless misrepresentation in an affidavit is necessary to a magistrate's finding that *that affidavit* supports probable cause, the warrant must be invalidated. "The fact that probable cause did exist and could have been established by a truthful affidavit does not cure the error." *United States v. Davis*, 714 F.2d 896, 899 (9th Cir.1983).

■ The government finally argues that the need to keep the federal investigation confidential required that they not disclose the existence of a wiretap in the warrant affidavit, and that any failure to clearly define the nature of the 'CRS' should be seen not as reckless disregard but as a good-faith effort to maintain this confidentiality while adhering to the literal truth. Courts have rejected the notion that law enforcement may make misrepresentations in warrant affidavits in order to protect the confidentiality of their sources. *See, e.g., United States v. Broward*, 594 F.2d 345, 351 (2d Cir.), *cert. denied*, 442 U.S. 941, 99 S.Ct. 2882, 61 L.Ed.2d 310 (1979). There are other ways of protecting confidential information sources used in search warrant applications. Inspector Hanley could have submitted the warrant affidavit under seal, submitted a redacted affidavit along with an unredacted one to be sealed,

or disclosed the nature of the source to the reviewing magistrate in *in camera* sealed proceedings.[3] Furthermore, so that the magistrate has the actual facts to support probable cause rather than the affiant's characterizations, the magistrate must be advised of what is fact and what is characterization. The way to accomplish this is to set forth the pertinent conversation and then interpret them where code or other obscure language is used. Law enforcement must pursue those means of protecting investigations which do not risk compromising the protections of the Fourth Amendment.

Viewing the affidavit as a whole, it is clear that any hints at the true nature of the source which the government might have included in the affidavit are outweighed by the use of language incompatible with a nonhuman source and the inclusion of information relevant only to human informants. Inspector Hanley deliberately drafted the affidavit so as to conceal the existence of the wiretap, and consequently should have known that a reviewing magistrate would likely conclude that the CRS was a person rather than a wiretap. The court finds that Inspector Hanley's description of the CRS in the affidavit is so misleading as to constitute a reckless disregard for the truth.

## II. The Necessity of the Misrepresentations to the Finding of Probable Cause

The second prong of the *Franks* inquiry requires courts to determine whether the affidavit with the misrepresentations omitted would support a finding of probable cause. *Franks*, 438 U.S. at 155–56, 98

---

**3.** The government maintained at oral argument that disclosing the existence of the wiretap to the reviewing magistrate in any manner would jeopardize the confidentiality of the wiretap and the federal investigation. The court finds offensive any suggestion that the judges and magistrates responsible for issuing warrants do not have respect for their obligations of confidentiality and emphatically rejects this argument for necessity.

S.Ct. 2674; *Jordan*, 291 F.3d at 1100. If it would not, then the fruits of the search must be suppressed.

■ Were the court to treat each factual assertion attributed to the CRS as a misrepresentation to be excluded from consideration in the probable cause analysis, very little would remain. The affidavit would contain statements pertaining to McCain's criminal history, the address of her apartment, and the car that she drives. It would also indicate that the car of a known narcotics trafficker had been parked in her apartment complex. This clearly would not sustain probable cause to search McCain's apartment.

The government contends that if the magistrate had known that the CRS was a wiretap not a person, he would have deemed the information even more reliable and would have been even more disposed to issue the warrant. Because a wiretap is more reliable than a human informant, the government argues, concealing the nature of the wiretap only understated probable cause.

■ The government's argument demonstrates a fundamental misunderstanding of the role of warrant application in the protections established by the Fourth Amendment. The Warrant Clause interposes the judgment of a detached and neutral magistrate between investigating officers and the intrusion into citizens' private lives. *United States v. Alvarez*, 810 F.2d 879, 883 (9th Cir.1987). In order to effect this purpose, "a warrant affidavit must set forth particular facts and circumstances underlying the existence of probable cause, so as to allow the magistrate to make an independent evaluation of the matter." *Franks*, 438 U.S. at 165, 98 S.Ct. 2674. Conclusory statements will not suffice. The affidavit must provide substantial basis for the magistrate to conclude that probable cause exists. *Illinois v. Gates*, 462 U.S. 213, 239, 103 S.Ct. 2317, 76

L.Ed.2d 527 (1983) ("Sufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others."); *Nathanson v. United States*, 290 U.S. 41, 47, 54 S.Ct. 11, 78 L.Ed. 159 (1933).

A wiretap can be expected to relay conversations more accurately than a human informant would—had the affidavit included transcripts of conversations as reported by a 'confidential reliable source,' the government might be correct that probable cause would be stronger if the source were a wiretap than if it were a person. A wiretap cannot report conclusions beyond the conversation, however, and the summaries set forth in the affidavit—that McCain was engaged in narcotics activity, had a narcotics relationship with a known trafficker, and had stored narcotics at her apartment—might be accepted by a magistrate as reports of a reliable human informant but must be examined more closely when they are an investigator's interpretation of coded conversations. "The point of the Fourth Amendment ... is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime." *Johnson v. United States*, 333 U.S. 10, 14, 68 S.Ct. 367, 92 L.Ed. 436 (1948).

The affidavit in the present case prevented the magistrate from exercising proper judgment in two ways. First, it was misleading as to the source of the information presented. Because the magistrate's evaluation of information may be affected by its source, the affiant's improper identification of the sources alone may provide grounds to invalidate a warrant.

In *Franks* itself, for example, the affiant stated that he personally had interviewed two witnesses who had, in fact, spoken only to a different officer and had given information "somewhat different" from that set forth in the affidavit. 438 U.S. at 158, 98 S.Ct. 2674. In *United States v. Davis, supra,* the Ninth Circuit invalidated a search warrant in which some of the information claimed to be within the personal knowledge of the affiant actually had been gathered by other officers and reported to the affiant second-hand. *Id.* at 899. Drawing a parallel to *Franks,* the court found that "[b]y failing properly to identify their sources of information, the affiants in each case made it impossible for the magistrate to evaluate the existence of probable cause." *Id.*

The affidavit is flawed in a second, related way. In attempting to disguise the nature of the source, Inspector Hanley also summarized the conversations in a manner which presented his own interpretations as direct factual evidence. In *United States v. Smith,* 118 F. Sup.2d 1125 (D.Colo.2000), a district court held a search warrant invalid where the affiant, in describing wiretap conversations about a narcotics transaction, did not state which summaries of conversations involved his own interpretation of drug lingo and which did not. The court noted that while there is no inherent harm in an affiant announcing conclusions about the content of coded conversations based on his experience in law enforcement, a magistrate can only make an accurate determination of probable cause if the affiant makes clear that he is translating a conversation and provides both the original conversation and the interpretation. *Id.* at 1133. The government maintains that the conversations at issue in this case were somewhat less coded than those in *Smith.*[4] Even were that the case, Inspector Hanley here not did not simply fail to state that his summaries of wiretap conversations required interpretation—he failed to mention that he was summarizing conversations at all, and instead submitted his conclusions based on the coded conversations to the magistrate as facts. As in *Smith,* Inspector Hanley's failure to alert the magistrate to the fact that he was interpreting and summarizing evidence forced the magistrate to rely on the judgment of law enforcement officers rather than exercising independent judgment as he was required to do.

By describing the wiretap as if it were a human informant, Inspector Hanley made a proper determination of probable cause impossible. Had the statements set forth in the affidavit been offered as Inspector Hanley's own conclusions about the wiretap evidence, they would constitute only conclusory statements that, based on such evidence, he had reason to believe that McCain was engaged in narcotics activity, had a narcotics relationship with a known trafficker, and had stored narcotics at her apartment. These 'bare conclusions' are insufficient to support a finding of probable cause. *Gates,* 462 U.S. at 239, 103 S.Ct. 2317; *Nathanson,* 290 U.S. at 47, 54 S.Ct. 11. By offering his own interpretations of wiretap evidence as the reports of a confidential informant, Inspector Hanley transformed conclusions which would require verification by the independent judg-

---

4. Although the government submits a number of intercepted calls it maintains are explicitly about drug transactions, the conversations are generally in code. *See supra* n. 2. Like many of the intercepted calls in this case, the conversations in *Smith* referred to amounts of unspecified objects, *see, e.g.* 118 F.Supp.2d at 1128 ("Uh, wanna look at doing five hun-dred?"). In conversations with McCain, Stepney twice mentions 'dope,' each time in a context that does not suggest he is conducting a drug transaction with her. Hanley Dec., Exh. at 60, 72. The court does not find this evidence dramatically different from the evidence in *Smith.*

**1196**

ment of a magistrate into factual evidence as if provided by a human source which would require less scrutiny.[5]

The court's finding is consistent with the few other courts to have addressed this issue. At least two federal courts have refused to hold a warrant invalid where the affidavit described a wiretap as a 'confidential informant,' but in those cases the magistrate was informed orally of the true nature of the source. *United States v. Glinton*, 154 F.3d 1245, 1255 (11th Cir. 1998), *cert. denied*, 526 U.S. 1032, 119 S.Ct. 1281, 143 L.Ed.2d 374 (1999); *United States v. Cruz*, 594 F.2d 268, 271–72 (1st Cir.), *cert. denied*, 444 U.S. 898, 100 S.Ct. 205, 62 L.Ed.2d 133 (1979). In each of case, the deciding court emphasized that because of the affiant's oral disclosure, the magistrate had not actually been misled as to any facts.[6] Another federal court of appeals cautioned that mislabeling wiretaps as human informants could affect the determination of probable cause. *United States v. Johnson*, 696 F.2d 115, 118 n. 21 (D.C.Cir.1982). Finally, at least one state court has actually excluded evidence gained from a search warrant in which the facts attested to by the 'confidential reliable source' described in the warrant affidavit turned out to be summaries of wiretap evidence provided to the affiant by a police officer in another state. *Florida v. Beney*, 523 So.2d 744 (Fla.Ct.App.1988).

As a matter of sound Fourth Amendment jurisprudence and policy, this court cannot accept the government's treatment of wiretap evidence in the warrant affidavit. The references to the wiretap as a Confidential Reliable Source are misleading; the affiant's characterizations are not facts, and his submission of them as such made a proper determination of probable cause impossible. If the court were to hold otherwise, it would condone the use of these procedures in the future—procedures inimical to the warrant requirements of the Fourth Amendment.

*CONCLUSION*

For the foregoing reasons, defendant McCain's motion to suppress the fruits of the search conducted at 358 Alida Way # 44 in South San Francisco, California, on August 9, 2001 is GRANTED.

IT IS SO ORDERED.

---

**5.** When a warrant application is based on information from a human informant, one of the factors a magistrate considers in evaluating probable cause is whether the affidavit sets forth a basis of the informant's knowledge. *Gates*, 462 U.S. at 233, 103 S.Ct. 2317. A lesser showing of the basis of knowledge may be offset by a strong showing of the informant's past reliability, however, making the scrutiny of the informant's inferences less rigorous than the constitutionally mandated scrutiny of law enforcement inferences.

**6.** The government seeks to distinguish *Glinton* and *Cruz* on the grounds that the warrant affidavits in those cases each described the wiretap as an 'informant' rather than as a 'source,' as the present affidavit does. While relevant to the recklessness of the affiant, *the choice of moniker alone does not make the* affidavit in the present case qualitatively less misleading than the affidavits in those cases.