NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 12-2432

_____

UNITED STATES OF AMERICA

v.

LAMONT LAPRADE,
a/k/a Lamont El,
                              Appellant

_____

Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Criminal Action No. 2-10-cr-00019-002)
District Judge: Honorable Donetta W. Ambrose

_____

Submitted Under Third Circuit LAR 34.1(a)
January 11, 2013

Before:  SCIRICA, AMBRO, and FUENTES, Circuit Judges

(Opinion filed: January 22, 2013)

_____

OPINION

_____

AMBRO, Circuit Judge

        Lamont Laprade was tried and convicted by a jury in the Western District of

Pennsylvania on multiple counts relating to the armed robbery of a credit union.  He

argues on appeal that confessional statements he made to law enforcement officers following his arrest should have been suppressed, his due process right to be presumed innocent until proven guilty was violated by the jury seeing him in prison clothes during trial, and his conviction for carrying or using a firearm in connection with the robbery should be overturned because there was insufficient evidence on which to convict. We disagree, and affirm his conviction on all counts.

## I. Background

On January 8, 2010, Laprade and David Mathis—who apparently became acquainted as inmates at a federal prison in Virginia—robbed the Westmoreland Community Credit Union in Greensburg, Pennsylvania. That morning, after meeting at a Motel 6 in the Pittsburgh area, Laprade and Mathis went on a shopping spree to purchase items—including gloves, a ski mask, and a laundry bag—for commission of the robbery. Later that afternoon, Mathis entered the Credit Union armed with a Glock 9 millimeter handgun. He fired two shots, one of them striking a teller. After taking cash totaling $6,878.00, Mathis left the credit union and entered the passenger side of a Range Rover driven by Laprade.

Laprade attempted to leave the Credit Union's parking lot but his exit route was blocked by a customer entering the lot. When the driver refused to reverse her car, Mathis leaned out of the car and fired a shot. The driver ducked and heard two more shots fired. She did not look up until the Ranger Rover had disappeared, and did not see who fired the latter shots. Law enforcement officers, however, recovered three spent casings in the parking lot, two 9 millimeter casings and one .45 caliber casing.

A state trooper subsequently spotted the Range Rover (the details of which had been broadcast on police channels), and a chase ensued. Abandoning the vehicle, Laprade and Mathis ran into the woods. A laundry bag containing $6,878.00 was later discovered in the vehicle.

Because there was a thick layer of snow on the ground, police were able to track the two men. Laprade was arrested at a nearby barn without incident. Mathis, having spent the night outdoors in near-zero temperatures, was arrested the next day at a mall.

Following his arrest, Laprade admitted that Mathis had asked him to come to Western Pennsylvania for a "job" and that Mathis had requested Laprade bring ammunition with him, which he did. Laprade also admitted that Mathis discharged his 9 millimeter weapon twice in the parking lot and that Laprade had discharged his .45 caliber weapon when Mathis told him he needed to fire his weapon as well.

Federal agents and police searched for Laprade's .45 caliber pistol but were unable to recover it. A subsequent search of Laprade's residence in West Virginia, however, resulted in the discovery of a partially full box of .45 caliber ammunition.

Laprade was charged with bank robbery in violation of 18 U.S.C. § 2113(a), armed bank robbery in violation of 18 U.S.C. § 2113(d), conspiracy to commit robbery and armed bank robbery in violation of 18 U.S.C. § 371, and using and carrying a .45 caliber handgun in connection with the armed robbery in violation of 18 U.S.C. § 924(c)(1)(A)(iii).

Laprade moved to suppress the statements he made to law enforcement officers following his arrest on the ground that the statements were not knowing, intelligent, and voluntary. The District Court denied the motion.

Although he was represented by counsel at the suppression hearing, Laprade proceeded *pro se* at trial. A jury convicted him on all counts. The Court subsequently sentenced him to a prison term of 190 months, followed by five years of supervised release.

Laprade timely filed a notice of appeal, and is represented by counsel on appeal.

## II. Jurisdiction

The District Court had jurisdiction over Laprade's criminal prosecution pursuant to 18 U.S.C. § 3231. We have appellate jurisdiction pursuant to 28 U.S.C. § 1291.

## III. Discussion

### A. Suppression of Statements

Laprade, as noted, moved to suppress statements he made following his arrest on the ground that the statements were not knowing, intelligent, and voluntary. Specifically, he asserted (1) he was under the influence of narcotics at the time the statements were made, (2) his will was overborne by promises made by law enforcement officers that he would be prosecuted in state rather than federal court, and (3) his statements were the result of impermissible threats and inducements made to him by law enforcement officers.

The District Court denied Laprade's motion to suppress. The Court, based on the testimony of two special agents and a Pennsylvania state police trooper, found as follows:

4

> The evidence establishes that [Laprade] was able to give clear and lucid responses to questions asked. [He] displayed no signs of drug or alcohol intoxication.
>
> In addition, the evidence established that no promises were made to [Laprade] that he would be prosecuted in state court; only that officers would make [his] preference known to prosecutors. No other promises were made to [him] which would have rendered his statements involuntary, coerced and, therefore, inadmissible.

Laprade offered no evidence at the hearing.

"We review a district court's order denying a motion to suppress under a mixed standard of review. We review findings of fact for clear error, but we exercise plenary review over legal determinations." *United States v. Lewis*, 672 F.3d 232, 236–37 (3d Cir. 2012) (citing *United States v. Tracey*, 597 F.3d 140, 146 (3d Cir. 2010)).

On appeal, Laprade continues to assert that his statements were inadmissible for the reasons noted above. However, he points to no evidence in the record suggesting the District Court's factual findings to the contrary—*i.e.*, that he showed no signs of intoxication, no promises were made he would be tried in state court, and no other threats or inducements were made—were incorrect, let alone any evidence showing these findings were clear error. Laprade, in fact, does not cite to the record at all. Regardless of the legal bases of his arguments (about which we express no opinion), without underlying factual support they cannot be successful.

## B. <u>Sufficiency of the Evidence</u>

Laprade was convicted of using and carrying a .45 caliber firearm in connection with the armed robbery in violation of 18 U.S.C. § 924(c)(1)(A)(iii). He argues on

5

appeal that the evidence presented at trial was insufficient to support his conviction on this charge. According to Laprade, the jury could not have reasonably concluded that he possessed a .45 caliber firearm during the crime because that firearm was never recovered, no eyewitnesses saw him discharge a firearm, and the majority of shell casings found at the scene were fired from Mathis's 9 millimeter firearm.

Because Laprade did not move for a judgment of acquittal on this ground at the close of evidence, we review for plain error. *United States v. Mornan*, 413 F.3d 372, 381 (3d Cir. 2005) (citing *United States v. Wolfe*, 245 F.3d 257, 260–61 (3d Cir. 2001); *United States v. Gaydos*, 108 F.3d 505, 509 (3d Cir. 1997); Fed. R. Crim. P. 52(b)) ("Where, as here, a defendant does not preserve the issue of sufficiency of the evidence by making a timely motion for judgment of acquittal at the close of the evidence, this Court reviews the sufficiency of the evidence for plain error."). "The plain error standard is met when '(1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected the appellant's substantial rights, which in the ordinary case means it affected the outcome of the district court proceedings; and (4) the error seriously affects the fairness, integrity or public reputation of judicial proceedings.'" *United States v. Lee*, 612 F.3d 170, 178 n.6 (3d Cir. 2010) (quoting *United States v. Marcus*, –––– U.S. ––––, 130 S. Ct. 2159, 2160 (2010)).

We are not persuaded the jury committed plain error in convicting Laprade on this charge. Section 924(c)(1)(A)(iii) provides in pertinent part:

> [A]ny person who, during and in relation to any crime of violence or drug trafficking crime . . . for which the person may be prosecuted in a court of the United States, uses or

6

carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall . . . if the firearm is discharged, be sentenced to a term of imprisonment of no less than 10 years.

At trial, the Government introduced Laprade's statements that he carried and discharged a .45 caliber handgun in the parking lot as he and Mathis were departing the credit union. Those statements were corroborated by evidence introduced at trial that a .45 caliber shell was recovered from the parking lot and that a partially full box of .45 caliber ammunition was recovered from Laprade's home. This is sufficient evidence for a reasonable jury to convict.

It is settled that "the government may defeat a sufficiency-of-the-evidence challenge on circumstantial evidence alone." *United States v. Iglesias*, 535 F.3d 150, 156 (3d Cir. 2008) (citing *United States v. Bobb*, 471 F.3d 491, 494 (3d Cir. 2006)). There is no requirement that there be eyewitness testimony of the defendant firing the weapon or that the authorities recover the weapon. Moreover, that all but one of the casings recovered at the crime scene were 9 millimeter casings from Mathis's firearm is in fact consistent with Laprade's statement that he fired his weapon once. On this record, we have little difficulty concluding that a reasonable jury could convict Laprade for using the .45 caliber firearm.

### C. **Due Process Rights**

Finally, Laprade asserts he was denied due process by his wearing an orange jumpsuit during trial. We have held, however, that a defendant's due process right to be presumed innocent until proven guilty is only infringed if he is compelled to appear

7

before a jury in his prison clothes. *Gaito v. Brierley*, 485 F.2d 86, 88 n.3 (3d Cir. 1973) ("'A defendant may not remain silent and willingly go to trial in prison garb and thereafter claim error.'" (quoting *Hernandez v. Beto*, 443 F.2d 634, 637 (5th Cir. 1971) (alteration omitted))). There is no indication that the Government forced Laprade to wear the jumpsuit during trial. Indeed, there is no record of Laprade objecting to his attire at all during trial.[1] Accordingly, we have no basis on which to hold Laprade's due process rights were violated.

\* \* \* \* \*

For these reasons, we affirm Laprade's conviction.

---

[1] Laprade first raised this issue in a post-conviction motion. *See United States v. El*, Cr. No. 10-19-2, 2012 WL 1609910 (W.D. Pa. May 7, 2012). The District Court rejected Laprade's assertion that his due process rights were infringed because there was no suggestion the attire was compelled. *Id.* at \*1.