NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-1700
_____

UNITED STATES OF AMERICA

v.

LAMONT LAPRADE,
also known as Lamont LaPrade El,
                                                    Appellant
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Crim. No. 2-10-cr-00019-002)
District Judge: Donetta W. Ambrose
_____

Argued: March 2, 2016

Before: JORDAN, GREENBERG, and SCIRICA, Circuit Judges

(Filed: December 19, 2016)

Diana Stavroulakis, Esq. (Argued)
262 Elm Court
Pittsburgh, PA  15237
        *Counsel for Appellant*

Jane M. Dattilo, Esq.
Rebecca R. Haywood, Esq.
Michael L. Ivory, Esq. (Argued)
Office of United States Attorney
700 Grant Street
Suite 4000
Pittsburgh, PA  15219
        *Counsel for Appellee*

_____

OPINION[*]

_____

**SCIRICA**, *Circuit Judge*

Lamont LaPrade appeals from the denial of his motion seeking habeas corpus relief under 28 U.S.C. § 2255 because of an *Alleyne* error when he was convicted for using or carrying a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A) but sentenced for a separate crime, discharging a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A)(iii), which carries a higher mandatory minimum sentence by five years. We will grant LaPrade habeas relief and remand for re-sentencing to correct the *Alleyne* error.

## I.

## A.

LaPrade and David Mathis, a co-defendant, committed an armed robbery of Westmoreland Community Federal Credit Union on January 8, 2010. While Mathis entered the bank, shot the teller using a Glock 9 millimeter handgun, and forced other tellers at gunpoint to empty cash from the drawers and vault into a bag, LaPrade waited outside in the driver's seat of their getaway vehicle, a green Land Rover. Once he had the money—around $6,878—Mathis entered the passenger seat of the Land Rover. But

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

2

when LaPrade attempted to speed out of the parking lot in the getaway car, a prospective bank customer drove into the parking lot, inadvertently blocking their escape route. Mathis leaned out of the car and fired a shot toward the driver. The driver of the incoming vehicle ducked and heard two more shots fired, although she did not see who fired the other two shots.

LaPrade and Mathis fled the scene via a different exit from the parking lot, but both men were arrested by police shortly after the armed robbery and attempted escape. Law enforcement officers recovered three spent casings in the parking lot: two 9 millimeter casings and one .45 caliber casing. Although police did not find the .45 caliber handgun, LaPrade admitted to police he was carrying that gun and discharged it during the escape from the bank parking lot. He also admitted Mathis possessed and fired the 9 millimeter handgun. Police officers discovered a partially full box of .45 caliber ammunition in LaPrade's residence.

Whether LaPrade discharged the firearm is not contested in this habeas proceeding, and his attorney admitted in briefing and at oral argument that LaPrade discharged the gun. Appellant Br. at 8.

LaPrade was charged with four counts of criminal conduct: bank robbery in violation of 18 U.S.C. § 2113(a) (Count 1); armed bank robbery, 18 U.S.C. § 2113(d) (Count 2); conspiracy to commit robbery and armed robbery, 18 U.S.C. § 371 (Count 3); and using and carrying a firearm during a crime of violence in violation of 18 U.S.C.

3

§ 924(c)(1)(A)(iii) (Count 6)[1].

LaPrade represented himself at trial and was convicted by a jury on all counts. The District Court instructed the jury that in order to return a guilty verdict with respect to Count 6, they needed to find the government proved only two elements beyond a reasonable doubt: "That the defendant committed the crime of violence charged in Count Two of the indictment, that is, armed bank robbery. And two, that the defendant during and in relation to that offense used or carried a firearm or knowingly possessed a firearm in furtherance of that same offense." App. 472. The District Court further clarified "[t]he government is not required to show that the defendant actually displayed or fired the weapon." App. 473. And in keeping with these instructions, the jury verdict slip described Count 6 as "[u]sing, carrying and possessing a firearm in furtherance of a crime of violence." App. 32. The jury never made a finding that LaPrade actually discharged the gun, or even brandished it.

The District Court sentenced LaPrade to 190 months in prison. This sentence included a mandatory minimum sentence of 10 years (120 months) for Count 6.[2]

---

[1] In the indictment, Count 6 described the offense as "us[ing] and carry[ing] a firearm . . . during and in relation to a crime of violence," which corresponds to 18 U.S.C. § 924(c)(1)(A), not (c)(1)(A)(iii). But, despite the description of the offense, the indictment listed the statutory provision violated as 18 U.S.C. § 924(c)(1)(A)(iii), which is the aggravated offense for "discharg[ing]" a firearm during and in relation to a crime of violence. At trial, the District Court provided jury instructions on the base offense of using and carrying, and the jury found him guilty of that crime (the base crime). But the District Court sentenced him for the separate crime of discharging a weapon, the most aggravated version of the crime.

[2] 18 U.S.C. § 924(c)(1)(A) "imposes differing mandatory minimum sentences depending upon whether the defendant 'uses or carries,' 'brandishe[s],' or 'discharge[s]' a firearm during and in relation to a crime of violence or drug trafficking crime." *United States v.*

4

LaPrade appealed his conviction, contending certain statements made to police regarding his possession and discharge should have been suppressed, that evidence of his gun use was insufficient to support Count 6, and that his due process rights were violated when he wore an orange jumpsuit at his trial. We rejected these contentions and affirmed his conviction on January 22, 2013. *United States v. Laprade*, 511 F. App'x 181 (3d Cir. 2013). At no point during trial or on direct appeal did LaPrade challenge the sufficiency of the indictment or the jury instructions with respect to Count 6; nor did he challenge his sentence. We denied LaPrade's request for rehearing en banc.

Within LaPrade's ninety day timeframe to petition the Supreme Court for a writ of certiorari, the Supreme Court decided *Alleyne v. United States*, 133 S. Ct. 2151 (2013). *Alleyne* overruled *Harris v. United States*, 536 U.S. 545 (2002), and held that "if a defendant is convicted of using or carrying a firearm during and in relation to a crime of violence, but is instead sentenced for brandishing a firearm, the defendant's Sixth Amendment right to be tried by a jury for the crime of brandishing a firearm has been violated." *United States v. Lewis*, 802 F.3d 449, 454 (3d Cir. 2015) (en banc) (citing *Alleyne*, 133 S. Ct. at 2163–64). The Supreme Court clarified that 18 U.S.C. § 924(c)(1)(A) (using or carrying), (A)(ii) (brandishing) and (A)(iii) (discharging) are all "separate, aggravated offense[s] that must be found by the jury" beyond a reasonable doubt. *Alleyne*, 133 S. Ct. at 2162 ("When a finding of fact alters the legally prescribed

---

*Lewis*, 802 F.3d 449, 452 (3d Cir. 2015) (en banc). The mandatory minimum sentences are five years, seven years, and ten years, respectively, depending on how the defendant was convicted of using the firearm. 18 U.S.C. § 924(c)(1)(A).

punishment so as to aggravate it, the fact necessarily forms a constituent part of a new offense and must be submitted to the jury."). This holding extends beyond § 924(c)(1)(A): "an *Alleyne* error occurs when a judge, rather than a jury, finds a fact that increases the mandatory minimum for a defendant" because there is a "fundamental right of a criminal defendant to have the jury, not the judge, find such facts." *Lewis*, 802 F.3d at 454.

LaPrade did not file a petition for certiorari with the Supreme Court. Instead, LaPrade filed a pro se habeas petition with the District Court under 28 U.S.C. § 2255 seeking to vacate, set aside, or correct his sentence, based in part on *Alleyne*. The government opposed this motion, contending in part that LaPrade procedurally defaulted on his *Alleyne* claim because LaPrade failed to object to the charge or sentencing at trial or on direct appeal. The District Court denied LaPrade's habeas petition, but granted him a certificate of appealability. LaPrade timely appealed.[3]

## II.[4]

LaPrade challenges only his sentence—not his conviction—and asks us to remand for a new sentence. Because LaPrade did not object to his sentence at trial or on direct appeal, his claim of *Alleyne* error is procedurally defaulted and LaPrade must

---

[3] As discussed at footnote 11 *infra*, there were irregularities with the indictment and the jury instructions, in addition to the *Alleyne* error. But we consider only the *Alleyne* error because LaPrade seeks habeas relief solely on the basis of this error.

[4] The District Court had jurisdiction under 28 U.S.C. §§ 2241 and 2255. We have jurisdiction under 28 U.S.C. §§ 1291, 2253, and 2255.

demonstrate why this default should be excused.[5] *United States v. Frady*, 456 U.S. 152, 167–68 (1982). "[T]o obtain collateral relief based on trial errors to which no contemporaneous objection was made, a convicted defendant must show both (1) 'cause' excusing his double procedural default, and (2) 'actual prejudice' resulting from the errors of which he complains." *Id.*

**A.**

"To establish 'cause' for procedural default, a defendant must show that 'some objective factor external to the defense impeded [his] efforts to raise the claim.'" *United States v. Pelullo*, 399 F.3d 197, 223 (3d Cir. 2005) (quoting *McCleskey v. Zant*, 499 U.S. 467, 493 (1991)). There is no "precise content" to the term "cause," nor is there "a comprehensive catalog of the circumstances that would justify a finding of cause." *Reed v. Ross*, 468 U.S. 1, 13 (1984); *Smith v. Murray*, 477 U.S. 527, 534 (1986). LaPrade contends he can establish cause because he had no basis to object to the sentence for Count 6 under *Harris v. United States*, 536 U.S. 545 (2002), which was the controlling

---

[5] Although we held "*Alleyne* cannot be applied retroactively to cases on collateral review[,]" *United States v. Winkelman*, 746 F.3d 134, 136 (3d Cir. 2014), LaPrade is able to seek relief by asserting an *Alleyne* violation because his case was not yet final when *Alleyne* was decided. *Griffith v. Kentucky*, 479 U.S. 314, 321–22 (1987) ("[R]etroactivity analysis for convictions that have become final must be different from the analysis for convictions that are not final at the time the new decision is issued."). In other words, there are no retroactivity concerns preventing habeas relief on the basis of *Alleyne* because "a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a 'clear break' with the past." *Id.* at 328. LaPrade's case was not yet final because his time to file a petition for certiorari with the Supreme Court had not expired. *Id.* at 321 n.6 ("By 'final,' we mean a case in which a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied.").

7

law at the time of his trial and sentencing.[6]

We believe LaPrade is able to establish cause. "[W]here a constitutional claim is so novel that its legal basis is not reasonably available to counsel, a defendant has cause for his failure to raise the claim" at trial or on direct review. *Reed*, 468 U.S. at 16. "By definition . . . there will almost certainly have been no reasonable basis upon which an attorney previously could have urged . . . the position that this Court has ultimately adopted" when the Supreme Court "explicitly overrule[s] one of [its] precedents." *Id.* at 17. Here, *Alleyne* explicitly overruled *Harris*. 133 S. Ct. at 2163. While we note that a claim is "not a novel one" when "the Federal Reporters [are] replete with cases involving [similar] challenges," *Bousley v. United States*, 523 U.S. 614, 622 (1998), we do not see a plethora of similar claims in the Federal Reporters, and the government has not pointed us to any such cases. [7] We agree that LaPrade had "no reasonable basis" to challenge his sentence under prevailing law at the time of his trial and sentencing.[8]

**B.**

LaPrade must also show that he suffered "actual prejudice" by demonstrating that

---

[6] *Harris* held "as a matter of statutory interpretation, § 924(c)(1)(A) defines a single offense. The statute regards brandishing and discharging as sentencing factors to be found by the judge, not offense elements to be found by the jury." 536 U.S. at 556.

[7] *Lewis* is a lone exception. In *Lewis*, the defendant was convicted of violating 18 U.S.C. § 924(c)(1)(A) (using or carrying a firearm during and in relation to a crime of violence), but following accepted practice under *Harris*, was sentenced for brandishing a firearm under § 924(c)(1)(A)(ii). 802 F.3d at 452. Despite the fact that *Alleyne* was not yet decided, the defendant in *Lewis* timely objected to his sentence. *Id.*

[8] The fact that the Supreme Court's *Alleyne* opinion expressly overruled a prior decision makes the cause analysis in this case different from the analysis in cases based on *Apprendi* errors. As we have previously noted, *Apprendi* did not overrule Supreme Court precedent and "the foundation for *Apprendi* was laid years before the decision was announced." *United States v. Jenkins*, 333 F.3d 151, 155 (3d Cir. 2003).

the District Court's sentencing error "worked to his *actual* and substantial disadvantage[.]" *Frady*, 456 U.S. at 170.

The government concedes the District Court committed an *Alleyne* violation by sentencing LaPrade for discharging a weapon under 18 U.S.C. § 924(c)(1)(A)(iii), when the jury only convicted LaPrade of the base offense of using or carrying a firearm under 18 U.S.C § 924(c)(1)(A). Applying the *Frady* standard, we believe the *Alleyne* error was prejudicial because it resulted in LaPrade being subject to a mandatory minimum sentence of ten years for Count 6, instead of a mandatory minimum of five years—the sentence corresponding to the jury's actual verdict. As the Supreme Court has noted, "[e]levating the low-end of a sentencing range heightens the loss of liberty associated with the crime[.]" *Alleyne*, 133 S. Ct. at 2161. And we have previously rejected the argument that the difference in mandatory minimums between "using or carrying" a firearm and the aggravated offenses under § 924(c)(1)(A) "would have made no difference to the sentence[.]" *See Lewis*, 802 F.3d at 458.[9]

We reject the government's contention in this case that the *Alleyne* error could not have been prejudicial because the evidence LaPrade discharged a gun was overwhelming and essentially uncontroverted. As we did in *Lewis*, we decline the government's invitation to look back at the trial record. In rejecting that approach, we said

---

[9] We are mindful that *Lewis* was decided on direct review under a harmless error standard. Nonetheless, our analysis of the effect of mandatory minimums—in which we concluded the "error . . . 'contribute[d] to the [sentence] obtained,'" 802 F.3d at 456 (quoting *Sochor v. Florida*, 504 U.S. 527, 539 (1992) (in turn quoting *Chapman v. California*, 386 U.S. 18, 24 (1967)))—is illustrative on prejudice, and LaPrade carries his burden even under the higher actual prejudice standard.

9

> Looking back to the trial record would run directly contrary to the essence of *Apprendi* and *Alleyne*. The motivating principle behind *Apprendi* and *Alleyne* is that judges must not decide facts that change the mandatory maximum or minimum; juries must do so. If we affirm because the evidence is overwhelming, then we are performing the very task that *Apprendi* and *Alleyne* instruct judges not to perform.

*Id.* at 456 (citing *Alleyne*, 133 S. Ct. at 2155, 2162; *Apprendi*, 530 U.S. at 490). The same principle applies here.

The government's citation to *United States v. Cotton*, 535 U.S. 625 (2002), in asking us to consider the evidence established at trial that LaPrade discharged the gun, is likewise unavailing. *Cotton* held an *Apprendi* error did not "seriously affect the fairness, integrity, or public reputation of judicial proceedings" because the "evidence [of guilt] . . . was 'overwhelming' and 'essentially uncontroverted.'" *Id.* at 632–33 (quoting *Johnson v. United States*, 520 U.S. 461, 470 (1997)). The Court in *Cotton* thus looked to the evidence established at trial to determine the effect of the *Apprendi* error, but it did so on plain error review under the "fairness, integrity, or public reputation of judicial proceedings" prong of that test. *Id.* It expressly did not decide whether the *Apprendi* error "affect[ed] substantial rights," a test which is akin to review for prejudice. *Id.* at 632; *United States v. Dobson*, 419 F.3d 231, 239 (3d Cir. 2005) ("In order to 'affect substantial rights,' an error must have been prejudicial."); *United States v. Adams*, 252 F.3d 276, 285 (3d Cir. 2001) ("Normally, in order for an error to 'affect substantial rights' . . ., the error must have been 'prejudicial[.]'"). When reviewing for prejudice, at least in cases involving sentencing error and not trial error, we do not assess the "fairness, integrity, or public reputation of judicial proceedings," and consequently we do not look

10

at the evidence at trial.[10]  This principle, which we have applied in the harmless error

context, is equally applicable here.  Accordingly, we decline to look at the evidence at

trial in determining whether the *Alleyne* error was prejudicial to LaPrade.

Because it is undisputed that the *Alleyne* error resulted in LaPrade being subject to

a higher mandatory minimum sentence than he would have been subject to had he been

sentenced corresponding to the jury's verdict, we conclude LaPrade carries his burden to

show actual prejudice resulting from the error.[11]

### III.

Because LaPrade has shown cause and prejudice to overcome procedural default,

we now consider the merits of his claim.  *Martinez v. Ryan*, 132 S. Ct. 1309, 1320 (2012)

---

[10] *See Lewis*, 802 F.3d at 457; *United States v. Jordan*, 291 F.3d 1091, 1096 n.7 (9th Cir. 2002) ("[T]he fairness and integrity prong is inapplicable to . . . harmless error review."); *see also United States v. Lane*, 474 U.S. 438, 450 (1986) ("we are not required to review records to evaluate a harmless-error claim, and do so sparingly" (quoting *United States v. Hasting*, 461 U.S. 499, 510 (1983))).

[11] Beyond the *Alleyne* sentencing error, there were irregularities in LaPrade's prosecution and in the District Court proceedings.  The indictment was flawed because although it recited the statute LaPrade was charged with violating, 18 U.S.C. § 924(c)(1)(A)(iii), it failed to list the elements of Count 6 (specifically the discharge of the firearm).  *See* Fed. R. Crim. P. 7(c)(1) ("The indictment . . . must be a plain, concise, and definite written statement of the essential facts constituting the offense charged.").  Further, we believe the jury instruction was erroneous because it charged them to find whether LaPrade violated 18 U.S.C. § 924(c)(1)(A), the base offense of using or possessing a firearm, even though LaPrade was indicted in Count 6 for the most aggravated offense of discharging a firearm, § 924(c)(1)(A)(iii).  In addition, the instruction erroneously instructed the jury that it was irrelevant whether LaPrade discharged the firearm.  App. 473.  Despite these apparent errors and irregularities, which could affect the classification of this case as one involving pure sentencing error, or a mix of trial and sentencing errors, *see Lewis*, 802 F.3d at 455, the parties only discuss the *Alleyne* error in this habeas petition.  Further, LaPrade does not ask for a new trial but requests re-sentencing solely to correct the *Alleyne* violation.  Accordingly, we will not consider the effect of any of these errors beyond the *Alleyne* violation.

("A finding of cause and prejudice . . . allows a federal court to consider the merits of a claim that otherwise would have been procedurally defaulted."). Although the government does not argue that there was no *Alleyne* violation, it does argue that LaPrade's unpreserved *Alleyne* argument does not rise to the level of warranting relief under the plain error standard.

The government's argument fails because, having cleared the cause and prejudice hurdle applicable to procedurally defaulted claims, LaPrade need not *also* clear the plain error hurdle. *See Frady*, 456 U.S. at 163–64 ("[T]he plain error standard is out of place when a prisoner launches a collateral attack against a criminal conviction."); *Pelullo*, 399 F.3d at 221 (same). Cause and prejudice analysis and plain error review serve equivalent purposes—when satisfied, they forgive a defendant's failure to raise his claim at an appropriate time, with plain error review forgiving the failure to raise a claim at trial, and cause and prejudice analysis forgiving the failure to raise it before his conviction became final. Because LaPrade has shown cause and prejudice sufficient to excuse his failure to raise an *Alleyne* objection before his conviction became final—a standard the Supreme Court has emphasized is "a significantly higher hurdle" than plain error review, *see Frady*, 456 U.S. at 166—we proceed to consider the merits of the *Alleyne* claim without requiring the redundant step of excusing his failure to raise the objection at trial or sentencing.

The government does not contest that LaPrade was sentenced under the mandatory minimum applicable to discharging a firearm under 18 U.S.C. § 924(c)(1)(A)(iii), even though the jury only convicted him of the base offense of using or carrying a firearm

12

under 18 U.S.C § 924(c)(1)(A). This was an obvious *Alleyne* error. As is evident in our analysis under the actual prejudice prong of the cause and prejudice analysis, the District Court's error was not harmless because it resulted in LaPrade being subject to a higher mandatory minimum sentence than had he been sentenced according to the jury's verdict. LaPrade has established a meritorious claim, and we will grant his habeas petition under 28 U.S.C. §2255.

## IV.

For the foregoing reasons, we will reverse the District Court's judgment denying LaPrade's § 2225 motion, and remand to the District Court with instructions to grant the motion and resentence LaPrade in accordance with this opinion and in consideration of 18 U.S.C. § 924(c)(1)(A) and the Sentencing Guidelines.